[No. 35191. Department Two. May 26, 1960.]

IRENE ZVOLIS, *as Executrix, Appellant*, v. JAMES J. CONDOS, *Respondent.*[1]

*Ursich & Jensen,* for appellant.

*Brodie & Fristoe,* for respondent.

[1]Reported in 352 P. (2d) 809.

FOSTER, J.—Appellant, plaintiff below, is the executrix[2] of the will of Nick Zvolis, deceased. It was executed five years before she was divorced from him on April 8, 1957. She sued to set aside the testator's quitclaim deed to real property in Pierce county to the respondent, James J. Condos. The appeal is from a judgment dismissing that action.

The real property in question was devised to their only son, Tommy, who was seventeen at the time of the trial. The respondent, James J. Condos, is decedent's stepson by a prior marriage and had been raised by him from the time he was five until he was sixteen years of age.

Tommy's custody was awarded to the appellant by the divorce decree. Although his parents had separated sometime before the divorce action was started, nevertheless, Tommy continued to live with his father until entry of the decree when he transferred his allegiance and thereafter resided with his mother.

On July 29, 1957, three months following the divorce, the deceased executed a general power of attorney to the respondent. On the 10th day of September, 1957, deceased conveyed the property by quitclaim deed to the respondent who agreed to provide for him for the remainder of his lifetime. He died October 23, 1957.

Other relevant findings of fact may be summarized as follows:

When the property was quitclaimed, the respondent agreed to pay some obligations of the deceased in addition to providing for him for the remainder of his life. The deceased intended the property as a gift to the respondent in so far as the value exceeded this consideration. Although almost blind, Zvolis was competent at the time of the execution of the deed and knew the natural objects of his bounty. The conveyance was of his own free will and ac-

---

[2]RCW 11.12.050 provides, in part:

" . . . A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse."

The right of the appellant to serve as the executrix of the will of her divorced husband is not challenged in this record.

cord. The deed was not executed as a result of the influence of the respondent or anyone else.

■ All but two of the twenty-three assignments of error relate to disputes of fact. It is sufficient to say that all findings of fact are supported by substantial evidence. The most favorable view of appellant's argument is that there was evidence to the contrary. This court does not retry factual disputes. *Thorndike v. Hesperian Orchards*, 54 Wn. (2d) 570, 343 P. (2d) 183; *Kelly v. Kelly*, 55 Wn. (2d) 494, 348 P. (2d) 652; *Stewart v. Smith*, 55 Wn. (2d) 563, 348 P. (2d) 970.

■ As part of her case in chief, appellant's counsel called the respondent as an adverse witness and examined him concerning the execution of both the deed and the power of attorney. Subsequently, when the respondent testified in his own behalf as to the same transactions with the decedent, the appellant objected in one instance on the ground that such was prohibited by RCW 5.60.030. Thus the appellant sought to use the respondent's testimony for her own purposes and then, when he testified in his own behalf, to raise the bar of the dead man's statute. This, however, was waived when she called him as her own witness and examined him respecting the transaction in question.

In *Johnson v. Peterson*, 43 Wn. (2d) 816, 264 P. (2d) 237, the late Judge Olson for this court reviewed our decisions and collected relevant literature. The conclusion there reached was stated very simply:

"Plaintiff waived the bar of the statute by examining defendant as we have stated. Where the incompetency imposed upon a witness by the statute is waived at all, it is waived as to all facts pertinent to the matters developed from the witness by the party for whose benefit the statute was enacted. . . ."

Based upon *Hemrich v. Hemrich*, 117 Wash. 124, 201 Pac. 10, and *Meyer v. Campion*, 120 Wash. 457, 207 Pac. 670, appellant argues ". . . that by virtue of the admission by the defendant of the relationship of trust and confidence, the deed is invalid as a matter of law unless given upon independent advice. . . ." While there are New Jersey

cases[3] so holding, we find nothing in our decisions expressing that view. Indeed, after reviewing the *Hemrich* case, the court concluded in *Meyer v. Campion, supra:*

"While it is not necessary for us to adopt the principle of independent advice in all cases, the lack of it in this case seems to us a very important factor. . . ."

■ We think the true rule is that stated in the fifth edition of Pomeroy's Equity Jurisprudence as follows:

"A gift by a principal to his agent may be valid and be sustained, if the absolute good faith, knowledge, and intent of both the parties is clearly established." 3 Pomeroy's Equity Jurisprudence, § 959c, p. 825, 828.[4]

Appellant's argument overlooks completely that the findings of the trial court are that the respondent sustained the burden of proving the gift was entirely free from undue influence and that the grantor executed the deed of his own free will and accord. The argument is that all gifts to fiduciaries are void if there is not independent advice. This gift was not even initiated by respondent. He never dominated the grantor in anything. Even in New Jersey the independent advice rule is not applicable unless the proof shows that the recipient dominated the grantor.[5]

---

[3]*Chandler v. Hardgrove*, 124 N. J. Eq. 516, 2 A. (2d) 661; *Croker v. Clegg*, 123 N. J. Eq. 332, 197 Atl. 13; *Kelso v. Kelso*, 95 N. J. Eq. 544, 123 Atl. 250, affirmed 96 N. J. Eq. 354, 124 Atl. 763, 33 A. L. R. 587.

[4]Pomeroy makes the following comment in the footnote to the quoted passage from his text:

"The equitable rule concerning gifts between principal and agent does not seem to be as stringent as that which regulates the similar dealings of trustees and their beneficiaries. Ralston v. Turpin, 129 U. S. 663, 32 L. ed. 747, 9 S. Ct. 420, affirming 25 F. 7, 18; Adair v. Craig, 135 Ala. 332, 33 So. 902; Hemenway v. Abbott, 8 Cal. App. 450, 97 P. 190 (quoting the text); Zimmerman v. Freshour, 107 [108] Md. 115, 69 A. 796, 16 L. R. A. (N.S.) 1087, 15 Ann. Cas. 1028 (quoting the text—mere absence of independent advice does not avoid gift; English and other cases examined); Moseley v. Johnson, 144 N. C. 257, 274, 56 S. E. 922; Smith v. Moore, 149 N. C. 185, 62 S. E. 892; Hobart's Adm'r v. Vail (Taylor v. Vail) 80 Vt. 152, 66 A. 820 (gift sustained)." 3 Pomeroy's Equity Jurisprudence (5th ed.), § 959c, note 8, p. 828.

[5]"The situation is quite different, however, when there is no evidence that the donor is dependent upon or servient to the donee. In such case, independent advice is not a prerequisite to the validity of an improvident gift even though the relationship between the parties is one of

■ The independent advice rule is resorted to only if there is no other way of proving the absence of undue influence. In any event, it is only one of the whole group of circumstances to be considered in determining whether the gift is the free and voluntary act of the donor or whether the gift was the result of the undue influence of the recipient. Independent advice is one way, but not the exclusive method, of establishing the fairness of the transaction and that it was voluntarily made, free from undue influence. *Kidd v. Williams,* 132 Ala. 140, 31 So. 458, 56 L. R. A. 879 (1901).

This same argument was pressed upon the Supreme Court of Oregon in *Rowe v. Freeman,* 89 Ore. 428, 451, 172 Pac. 508, 174 Pac. 727. That court answered as follows:

"According to the great weight of authority, it is not reasonable to hold that because A has confidence in and trusts B the former is under such disability that he cannot give the latter anything unless he is able to, and does, find some stranger who will advise the execution of the gift. The circumstance of want of independent advice is nearly always found as an auxiliary or makeweight to a decision where there is a defect of mental capacity or other conditions which of themselves tend to nullify the questioned transaction. . . ."

In 1908, the Court of Appeals, the court of last resort in Maryland, in *Zimmerman v. Frushour,* 108 Md. 115, 69 Atl. 796, 16 L. R. A. (N.S.) 1087, 15 Ann. Cas. 1128, was confronted with this identical question which it stated in the following sentence:

"The only question remaining therefore in the case is whether a gift *from a principal to an agent,* satisfactorily appearing to be the uninfluenced, deliberate, and intelligent

---

trust and confidence. *James v. Aller,* 68 *N. J. Eq.* 666 (*E. & A.* 1905); *Farley, et al., v. First Camden National Bank & Trust Co.,* 107 *N. J. Eq.* 272 (*Ch.* 1930); *Chandler v. Hardgrove,* 124 *N. J. Eq.* 516 (*Ch.* 1938); *Griffiths v. Griffiths,* 142 *N. J. Eq.* 751 (*E. & A.* 1948). If it appears the donee was not the dominant party in the relationship, then the presumption is in favor of the validity of the gift and the complainant has the burden of proving circumstances which make it voidable. *In re Fulper,* 99 *N. J. Eq.* 293 (*Prerog.* 1926); *Dill v. Dill,* 118 *N. J. Eq.* 374 (*Ch.* 1935); affirmed, 119 *N. J. Eq.* 467 (*E. & A.* 1936)." *Seylaz v. Bennett,* 5 N. J. 168, 74 A. (2d) 309.

act of the donor is to be held void merely because the donor had not independent advice."

A painstaking and exhaustive analysis of both the American and English decisions was made and the conclusion announced was that there was no hard and fast rule that independent advice is essential to sustain a gift between persons occupying a fiduciary relation.

The independent advice rule does not prevail in Ohio. *Federman v. Stanwyck* (Ohio App.), 108 N. E. (2d) 339 (1951).

Appellants' argument in *Pfingst v. Goetting,* 96 Cal. App. (2d) 293, 215 P. (2d) 93, was stated by the court as follows:

"Appellants' second point is that *'The decision of the court was erroneous for the reason that the decedent had no independent advice in any of the transactions involved in this case.'* "

The court held independent advice was not indispensable to the validity of the gift. It said:

"It is now definitely settled that independent advice is not indispensable. In *Brown v. Canadian etc. Co., supra* [209 Cal. 596, 289 Pac. 613], at page 599, the court says: 'In some early cases of this court, where the factual situation was particularly aggravating, expressions may be found, when considered separately and without reference to the text, which imply that independent advice is essential to the validity of such a gift. (*Ross v. Conway, supra* [92 Cal. 632, 28 Pac. 785]; *Dolliver v. Dolliver,* 94 Cal. 647 [30 P. 4]; *Yordi v. Yordi,* 6 Cal. App. 20 [91 P. 348]; *Nobles v. Hutton, supra* [7 Cal. App. 20 (93 P. 289)].) But those cases were never intended to hold that independent advice was indispensable. We are in accord with the rule that where a fiduciary relationship exists between the donor and donee, the absence of independent advice is a circumstance to be considered in determining whether the gift should be avoided because of alleged undue influence or fraud, but its non-existence alone does not authorize the court to avoid the gift. All utterances to the contrary have been squarely repudiated by this court. . . .' "

Fifteen years ago the supreme court of Arizona in *Amado v. Aguirre,* 63 Ariz. 213, 161 P. (2d) 117, 160 A. L. R. 1126, had occasion to examine the state of the law upon this sub-

ject. The results of that court's survey are stated in the following passage from its opinion:

"There are numerous decisions on the question of independent advice necessary to sustain a gift whenever a relationship of trust and confidence exists between the donor and the donee. It must be borne in mind, however, that the rule is applied only where the donee is the dominant person in the relationship. New Jersey and Tennessee hold that the gift will not be sustained whenever there is a relationship of trust and confidence unless the donor had competent and independent advice. This also appears to be the English and Canadian rule. However, in the greater number of the states the rule is that independent advice is not essential to the validity of the gift, although a fiduciary relationship exists between the donor and the donee, but the absence of such advice is a circumstance to be considered in determining whether the gift should be avoided because of undue influence or fraud. *Brown v. Canadian Industrial Alcohol Co.*, 209 Cal. 596, 289 Pac. 613; *Burnham v. Witt*, 217 Cal. 397, 18 Pac. (2d) 949; *Luiz v. Queen of Angels Hospital*, 53 Cal. App. (2d) 310, 127 Pac. (2d) 966; *Farmer v. Associated Professors, etc.*, 166 Md. 455, 171 Atl. 361; *Hawkins v. Gray*, 128 Ark. 143, 193 S. W. 509; *Rowe v. Freeman, supra* [89 Ore. 428, 172 Pac. 508, 174 Pac. 727]; *Kidd v. Williams*, 132 Ala. 140, 31 So. 458, 56 L. R. A. 879. We think the better reasoning supports the majority holding. Even though a party had independent advice, it might be the worst possible advice, and under such circumstances the rule should not be utilized to support the gift. As stated in the majority cases, it is our view that lack of independent advice is merely an element to be considered. . . ."

That court was in error, however, in the following sentence:

" . . . This also appears to be the English and Canadian rule. . . ."

Independent advice in the case of a gift to a fiduciary is not indispensable in either Canada[6] or England.[7]

---

[6]In 1902, the supreme court of Canada reviewed the English cases and reached the same conclusion in *Trusts & Guarantee Co. v. Hart*, 32 Can. S. Ct. 553.

The Canadian and English law again summarized in 9 Can. Encyclopedic Digest (2d ed.), Gifts, § 23, p. 47, 51:

"Where the fiduciary or confidential relationship is not such as to

 The presence or absence of independent advice is not conclusive. If a gift to a fiduciary is challenged, often the only way the recipient is able to show the lack of undue influence is by proof that the donor received independent advice. Consequently, if such proof is absent, courts frequently avert to that fact as one point in the failure to prove lack of undue influence. But here the court found that the respondent did prove by extrinsic evidence not only the capacity of the donor but that it was his free and voluntary act initiated entirely by himself.

Affirmed.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

---

raise the presumption of undue influence, the donee is not called upon to prove that the donor had independent advice; and even in cases where the donee is required to rebut the presumption, he is not always compelled to show that the donor had such advice. Proof of independent advice is always required in the case of a gift from a client to his solicitor, but not in the relations of parent and child, husband and wife, or principal and agent."

⁷The highest court in the British Empire in 1929 made an independent survey of the law respecting independent advice and reached the same conclusion:

". . . But their Lordships are not prepared to accept the view that independent legal advice is the only way in which the presumption can be rebutted; nor are they prepared to affirm that independent legal advice, when given, does not rebut the presumption, unless it be shown that the advice was taken. It is necessary for the donee to prove that the gift was the result of the free exercise of independent will. . . ." *Inche Noriah v. Shaik Allie Bin Omar*, 1929 App. Cas. 127, 135.